Annie Mae GASKINS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 89–131.

District of Columbia Court of Appeals.

Argued May 10, 1990.
Decided Aug. 27, 1990.

Ernest W. McIntosh, Jr., Washington, D.C., for appellant.

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This is an appeal from a January 5, 1989 order of the Superior Court granting the District of Columbia's (District's) motion for summary judgment and dismissing with prejudice appellant's negligence claim against the District. Appellant and plaintiff below, Annie Mae Gaskins, had allegedly been injured when she tripped and fell on an eroded portion of the sidewalk on M Street in Northeast Washington, D.C. Although the trial court did not specify the grounds for its decision, it apparently agreed with the District that Ms. Gaskins had failed to describe the location of the injury with adequate specificity and did not, therefore, meet the notice requirements of D.C.Code § 12–309 (1989).[1] Appellant contends that, while the notice she furnished the District may not have identified the place of the injury exactly, precision of that kind is not required by a statute intended to give the District threshold notice of a claim and an opportunity to conduct a reasonable investigation. We agree that the notice was sufficient under the standards enunciated by our decisions, and reverse.

## I.

On October 3, 1985, Ms. Gaskins allegedly suffered a broken arm when she tripped and fell on an eroded portion of a sidewalk while walking to a mailbox at the corner of M Street and Bladensburg Road, N.E. On November 6, 1985, Ernest W. McIntosh, Ms. Gaskins' attorney, notified the Mayor's office of the accident and the District's potential liability. The letter gave Ms. Gaskins' home address and stated that it was "written in compliance with D.C.Code § 12–309 ... to inform [the District] of the potential liability ... for a claim against it by Ms. Annie Mae Gaskins." Regarding the location of the accident, the notice stated:

> On or about October 3, 1985, during the evening, Ms. Gaskins was going to the mailbox at the corner of M Street and Bladensburg Road, N.E. She tripped over an eroded section of the sidewalk of M street, fell and broke her arm.

1. D.C.Code § 12–309 provides:
   An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant ... has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

The parties agree that the distance between Ms. Gaskins' home and the mailbox in question is approximately 150 feet.

On March 3, 1986, John J. Bourbon, an investigator for the District, sent a letter to attorney McIntosh stating that, after inspecting "the general area near the subject mailbox," he was unable to locate the eroded portion of the sidewalk. He therefore requested that the location of the fall be identified "through proximity to a fixed object." Mr. McIntosh did not respond to this request.[2] Gaskins filed suit against the District on September 19, 1988.

## II.

As we have repeatedly held, D.C.Code § 12–309 is designed to "(1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia,* 391 A.2d 803, 807 (D.C.1978). "Absent such notice, claims might be brought within the 'statute of limitations but so long after the event that it [would be] impossible for the District of Columbia to obtain evidence for use in litigation which may result.'" *Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C.1978) (citation omitted). *See also Romer v. District of Columbia,* 449 A.2d 1097, 1101 (D.C.1982) (notice requirement allows District to "quickly investigate before evidence bec[omes] lost or · witnesses unavailable, correct hazardous or potentially hazardous conditions, and settle meritorious claims"); *Washington v. District of Columbia,* 429 A.2d 1362, 1365 (D.C.1981) (en banc).

Section 12–309 "is to be strictly construed and compliance with [its] notice requirement is mandatory." *Id.* (citation and internal quotation marks omitted). Since notice under the statute is a "condition precedent" to filing suit against the District, we have held that it is not given merely by the filing of a complaint within the six-month statutory period. *Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C.1990). On the other hand, "with respect to the *details* of the statement [giving notice], precise exactness is not absolutely essential," and "liberal construction of the statute's requirements is in harmony with its purpose." *Washington, supra,* 429 A.2d at 1365 & n. 9, 1367–68 n. 19 (emphasis in original; citations and internal quotation marks omitted). Notice under the statute need only "furnish[ ] a reasonable guide for inspection," *Dixon v. District of Columbia,* 168 A.2d 905, 907 (D.C. 1961), and "provide an early warning to District of Columbia officials regarding litigation likely to occur in the future." *Pitts v. District of Columbia, supra,* 391 A.2d at 807. As we stated in *Washington, supra,* in rejecting the District's claim that the notice given there failed the "cause" and "circumstances" requirements:

> It may be true that the greater the detail provided in a letter, the more easily the District can identify its nature and decide how best to deploy its limited investigative resources. But the purpose of § 12–309 is not to help the District to evaluate known claims by requiring notice complete enough to state a formal cause of action. The statute, rather, was designed to protect the District of Columbia against unreasonable claims and to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted. Put another way, § 12–309 was intended solely to insure the District the opportunity for timely access to all relevant facts about a potential claim, in order to protect the District against an unfair advantage by the eventual claimant.

429 A.2d at 1368 (citations and internal quotation marks omitted).

In this case, the District does not dispute the pragmatic purpose of the statute—to furnish the District with "a reason-

---

**2.** McIntosh contends that he did not receive Bourbon's letter either because it was not sent, was not received, or was misplaced by his office upon receipt. For purposes of this opinion, we assume that the letter was received. *See Toomey v. District of Columbia,* 315 A.2d 565, 567 (D.C.1974).

able guide for inspection," *Dixon, supra,* and enable it to "conduct a prompt, properly focused investigation of the claim." *Washington, supra,* 429 A.2d at 1366 (footnote omitted). The District concedes that Ms. Gaskins' notice met the time, cause and circumstance requirements of the statute, and that it narrowed the location of the alleged accident to a 150–foot stretch of sidewalk along M Street, N.E., leading to a mailbox at the corner of M Street and Bladensburg Road. The District also does not dispute Ms. Gaskins' contention that there was no residence or business facing the sidewalk at the place of the fall by which the accident could be further localized.

The District argues, nevertheless, that the notice did not "describe the situs ... in such a manner as to reasonably enable the investigating agency to find it," *Hurd v. District of Columbia,* 106 A.2d 702, 704 (D.C.1954), because there could have been numerous more or less "eroded" sections of sidewalk in the 150–foot stretch identified, any one of which could have caused plaintiff's fall.[3] The notice thus failed, it says, because Ms. Gaskins did not at least specify the section of sidewalk (*e.g.,* eastern or middle third of the 150–foot stretch) where she fell. We conclude, to the contrary, that the notice furnished the required "reasonable guide for inspection," *Dixon, supra,* sufficient "to protect the District against an unfair advantage by the eventual claimant." *Washington, supra.*

Assuming there were multiple broken or eroded sections along the 150–foot stretch of sidewalk, even the notice the District concedes would suffice would not have guaranteed discovery of the exact place of fall. Equipped with the notice, however, an investigator could assess the condition of the sidewalk generally and identify those defects most capable of causing a trip and fall, and so arrive at a reasoned estimate of the District's liability. We think more is not required, otherwise § 12–309, a provision for "early warning ... regarding litigation likely to occur in the future," *Pitts, supra,* 391 A.2d at 807, would be a substitute for the precision properly expected in discovery after a lawsuit is filed and would "afford[ ] the District greater protection than [§ 12–309] was intended to provide." *Washington, supra,* 429 A.2d at 1368.

In *Washington,* the plaintiff alleged that the District had failed to maintain the premises where she fell in a safe condition by neglecting to install a proper stairway handrail and to maintain proper lighting. Plaintiff's § 12–309 notice, however, while giving the address of the premises, had failed to say where inside the building the injury occurred, *see* 429 A.2d at 1371 (Nebeker, J., dissenting), and contained no mention of the defects alleged to have caused the injury. *Id.* at 1363–64.[4] This court nonetheless upheld the notice as sufficient. In *Dixon v. District of Columbia, supra,* the notice alleged a fall and injury resulting from a faulty condition in the sidewalk, when in fact the defect was in the adjacent gutter. We upheld the notice, stating that "[a] studied search, instigated by [the plaintiff's] report, could reasonably be expected to have revealed the affected area upon examination of the perimeter of the sidewalk contiguous to the street." 168 A.2d at 907. Similarly, in *Stone v. District of Columbia,* 99 U.S.App.D.C. 32, 237 F.2d 28 (en banc), *cert. denied,* 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956), the plaintiff's notice alleged an accident caused by a defective manhole and cover located, variously, at the northwest and the southwest corner of a named intersection, when in fact the accident had occurred on

---

**3.** In its brief the District also disputed the assumption that an investigator could have located the place of the fall by tracing a route from Ms. Gaskins' house to the mailbox—pointing out that the notice letter failed to state that "she went to the mailbox from her house and that she went by the route that appears most direct on a map." At oral argument the District wisely did not press this argument: the *most* reasonable inference the letter conveyed is that Ms.

Gaskins went to mail the letter from her home, and went by the most direct route.

**4.** The notice merely gave the date and street address of the injury, stated that plaintiff had fallen while on the premises, and gave the names of hospitals that had treated her. 429 A.2d at 1363–64.

the northeast corner. In upholding the notice, the court of appeals stated: "Had the report filed by plaintiff's counsel merely referred to 6th and L Streets, S.E., without reference to a specific corner, we think the notice would have been beyond question." *Id.* 99 U.S.App.D.C. at 34, 237 F.2d at 30.

Each of these cases interpreting the requirement of "a reasonable guide for inspection" tolerated inaccuracies or lack of precision in the notice that did not affect its basic adequacy to permit a prompt and focused investigation.[5] We hold that the notice in this case was likewise sufficient.

There remains, however, another issue to be resolved. With commendable frankness, the District contends that the sufficiency of the written notice in this (and any) case should stand or fall on the document's contents without regard to later events. It points to our conclusion in *Washington* that "[t]he fact that the District investigated the incident as a result of the letter is irrelevant to the question whether the letter itself was 'notice in writing' within the meaning of § 12–309." 429 A.2d at 1367. The District therefore does not urge us to consider the fact that its investigator, acting on Ms. Gaskins' notification, went to the scene of the accident and purportedly could not find the eroded section of sidewalk, then contacted her attorney for further detail but received no answer to his request. Although the District does not argue the point, there is something troublesome about a plaintiff's failure to respond to a reasonable request by the District for follow-up information. In *Washington, supra,* we held that the description of the accident "provided enough information to enable the District to conduct a prompt, properly focused investigation *by contacting the victim (through her attorney)* and requesting the names of witnesses [etc.]. . . ." 429 A.2d at 1367 (emphasis added). The underscored language implies that the duty of proper notice may include an obligation to cooperate with reasonable requests for supplemental information. In this case, appellant contends that it is irrelevant that (or why) her counsel failed to answer the investigator's request for additional information; her notice was facially adequate, and the fact that the District professed inability to find the spot bespeaks only a faulty investigation. We are not so complacent, however, about the notion that an attorney may rebuff reasonable requests for further assistance under a statute designed in part to promote "settle[ment of] meritorious claims before complaints are filed." *Campbell, supra,* 568 A.2d at 1078.[6]

■ Nevertheless, on balance we agree with the District that § 12–309 is best interpreted—and administered—as limiting the inquiry into compliance to the adequacy of the information furnished in the notice. A contrary rule would tend to involve a threshold requirement of notice in disputes over the reasonableness of the investigation conducted by the District with the information supplied.[7] (It likewise, in a case such as this, would demand resolution of subsidiary issues such as whether counsel received the District's letter requesting further detail). In *Washington,* we rejected the approach of earlier decisions which had measured the degree of needed specificity by reference to subsequent events, in

---

5. It is true that in *Stone* the court also relied on the District's success in locating the accident site through its own efforts, and hence the lack of prejudice from the defective notice, 99 U.S.App. D.C. at 34, 237 F.2d at 30, and this court later rejected *Stone's* "prejudice" analysis, *Washington, supra,* 429 A.2d at 1367 & n. 19; see discussion *infra.* But in *Washington* we observed that "the District's ability to investigate the claims [in cases such as *Stone* ] (where the notice concededly provided inaccurate details) . . . demonstrates that liberal construction of the statute's requirements is in harmony with its purpose." *Id.* at 1367 & n. 19.

6. We are mindful, of course, of appellant's secondary contention that her attorney never received the investigator's letter and so had no opportunity to respond. See note 2, *supra.*

7. In response to the District's motion for summary judgment, appellant's investigator filed an affidavit stating that she had found the eroded portions of sidewalk "near the mailbox, because it was the only portion of the sidewalk where there was a hole." She contacted the Department of Public Works, and later obtained a copy of a work order indicating that the eroded section had been repaired.

particular the District's success in finding the place of accident. 429 A.2d at 1367 n. 19. By "rely[ing] solely on the contents of the [notice] letter," *id.* at 1367, we intended to enforce adherence to the requirements of the statute—already liberally construed. Similar reasoning dictates that we disregard the District's professed lack of success in finding the site armed with notice that, on its face, allows a properly focused investigation. *See Dixon v. District of Columbia, supra,* 168 A.2d at 907 ("Whether the District learns of the exact location *or not,* from whatever source, the test [remains whether from the notice itself the District, in the exercise of due diligence] should have been able to locate the offending defect" (emphasis added)).

Because the notice in this case was sufficient under § 12–309, the judgment is

*Reversed.*

ROGERS, Chief Judge, concurring:

In view of our decisions in *Washington v. District of Columbia,* 429 A.2d 1362 (D.C.1981) (*en banc*), and *Dixon v. District of Columbia,* 168 A.2d 905 (D.C.1961), I join the majority opinion. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1970). The effect of our continuing interpretation of the requirements of the notice statute, however, is to undermine the purpose of the statutory requirement that as a prerequisite to filing suit against the District of Columbia it must be given notice, within six months of the injury or damage, "of the approximate time, place, cause, and circumstances of the injury or damage." D.C.Code § 12–309 (1989 Repl.).

In *Washington v. District of Columbia,* the court stated that D.C.Code § 12–309 "was designed to protect the District of

Columbia against unreasonable claims and to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted." 429 A.2d at 1368 (quoting *Hurd v. District of Columbia,* 106 A.2d 702, 704 (D.C.1954) which, in turn, was quoting the legislative history of the statute). As the majority states, the adequacy of the notice is to be determined solely on the face of the notice and precise exactness of details is not "absolutely essential." See majority opinion at 721, *supra* (quoting *Washington v. District of Columbia, supra,* 429 A.2d at 1365 (further citations omitted)). Rather, all that we require is that the notice furnish "a reasonable guide for inspection." *Dixon v. District of Columbia, supra,* 168 A.2d at 905.[1] Here, however, as in *Dixon,* the District investigator determined that he could not locate the defect in the sidewalk which allegedly caused the injury to the plaintiff and asked plaintiff's counsel to provide further information. Counsel did not, and subsequently filed suit against the District.

Just as the court in *Dixon* was not troubled by the failure of the plaintiff's counsel to respond to the District's request for additional information, and in the absence of any finding by the trial court that the District's investigator did not exercise due diligence in trying to locate the defect, *see Dixon, supra,* 168 A.2d at 907 (due diligence standard), the court today holds that the plaintiff's notice was adequate under the statute. The question is adequate for what. The District could not locate the defect; hence, the District could not determine its potential liability; hence, the plaintiff's claim could not be settled without litigation.[2]

---

**1.** In *Dixon,* the court was satisfied that the District inspector, by "a studied search, instigated by [the plaintiff's report of a faulty sidewalk], could reasonably be expected to have revealed the affected area upon examination of the perimeter of the sidewalk contiguous to the street," and thereby found the faulty condition which, in fact, was in the gutter, and not the sidewalk. The court noted that the "ruts were not inconspicious nor were they far removed from the sidewalk; on the contrary, [the plaintiff's] photographs show them as prominent and

immediately next to the sidewalk." 168 A.2d at 907.

**2.** In fact, according to the affidavit filed by appellant in response to the District's motion for summary judgment, the defect in the sidewalk was located by the plaintiff's investigator and repaired in July–August 1986. This was nine to ten months after the plaintiff's fall. Nevertheless, this should not excuse plaintiff's counsel failure to respond to the District's request for additional information. There is no finding by

Consequently, it appears that we have reached the point where, even if the written notice is, in fact, inadequate to enable the District's presumably diligent investigator to identify the alleged defect, it is nevertheless legally sufficient and the plaintiff and plaintiff's counsel may ignore, without fear of being barred from filing suit, a request by the District for further information that would enable it to locate the defect. Thus, suits will be filed that might otherwise have been settled since the defect will go undetected—had it been found the District might have settled the plaintiff's claim and repaired the defect to prevent harm to others. Surely something is amiss.

the trial court that the District's investigator did not exercise due diligence or that the District was not prejudiced. See majority opinion at 723 n. 5 and surrounding text citing cases in which there was a finding of no prejudice. *See Levine v. City of New York,* 111 A.D.2d 785, 490 N.Y.S.2d 533, 535–36 (2 Dept.1985) (notice of claim did not provide reasonable basis for city to adequately investigate since, despite sufficient description of location of accident, city had no idea what it would be looking for at that location; city prejudiced when not able to conduct proper investigation while facts surrounding incident were still fresh).